Gary S. Saunders, Esq. (SBN: 144385)
SAUNDERS LAW GROUP
1891 California Ave., Suite 102
Corona, CA 92881
Tel. (951) 272-9114
Fax (951) 270-5250

Attorney for Plaintiffs,
Michael Brookhyser and
Deborah Brookhyser

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

MICHAEL BROOKHYSER an individual, and DEBORAH BROOKHYSER, an individual,

Plaintiffs,

v.

THE WOLF FIRM, A LAW CORPORATION; HSBC BANK USA, NATIONAL ASSOCIATION AS TUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS, INC., MORTGAGE PASS-THROUGH CERTIFICATES, MANA SERIES 2007-OAR2, NATIONSTAR MORTGAGE, LLC; and DOES 1 – 10, inclusive,

Defendants.

**CASE NO: 8:22-cv-01358-JWH-JDE**

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

1. VIOLATION OF HOMEOWNERS BILL OF RIGHTS;
2. VIOLATION OF CIVIL CODE § 2923.55;
3. VIOLATION OF CIV. CODE § 2924.17;
4. BREACH OF GOOD FAITH AND FAIR DEALING;
5. VIOLATION OF FDCPA; AND
6. VIOLATION OF RESPA

JURY TRIAL DEMANDED

SAUNDERS LAW GROUP
1891 California Avenue, Suite 102, Corona, CA 92881 Tel (951) 272-9114 Fax (951) 270-5250

1

**COMES NOW**, Michael Brookhyser and Deborah Brookhyser (hereinafter "Plaintiffs") by and through their counsel files their Verified First Amended Complaint and hereby allege as follows:

## PARTIES

1.    Plaintiffs, Michael Brookhyser and Deborah Brookhyser, the rightful and legal owners of real property commonly known as and located at: 5301 Myra Avenue, Cypress, CA 90630 ("Subject Property"), APN No. 241-055-08, and legally described in **Exhibit "A"** attached hereto and made a part hereof.

2.    Plaintiffs allege, upon information and belief, Defendant HSBC BANK USA, NATIONAL ASSOCIATION AS TUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS, INC., MORTGAGE PASS-THROUGH CERTIFICATES, MANA SERIES 2007-OAR2 ("HSBC" and/or "Defendant"), is and at all times mentioned herein was conducting business in Orange County, California with NATIONSTAR MORTGAGE, LLC as its servicer is the purported beneficiary of the loan that is secured by the Deed of Trust that is the subject of this litigation.

3.    Plaintiffs allege, upon information and belief, Defendant NATIONSTAR MORTGAGE, LLC ("NATIONSTAR" OR "Defendant"), is and at all times mentioned herein was conducting business in Orange County, California is the purported servicer of the loan that is secured by the Deed of Trust that is the subject of this litigation.

4.    Plaintiffs allege, upon information and belief, Defendant    THE WOLF FIRM ("Defendant"), is and at all times mentioned herein was conducting business in Orange County, California. The Wolf Firm is the purported successor and foreclosing trustee of the loan that is secured by the Deed of Trust that is the subject of this litigation.

5.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-10, inclusive ("DOES"), and therefore sue them by fictitious names. Plaintiffs will amend this complaint to

allege DOES's true names and capacities when they are ascertained. Plaintiffs request that when the true names and, capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

6.      Plaintiffs are informed and believe and upon this basis alleges that DOES claim some right, title, estate, lien, or interest in the Subject Property, adverse to Plaintiffs' own title. Each of these claims constitutes a cloud on Plaintiffs' title to the Subject Property from which Plaintiffs seeks relief.

7.      Plaintiffs are informed and believes and upon this basis alleges that DOES are contractually, strictly, negligently, intentionally, or vicariously liable, and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event, or happening set forth in this complaint, and that DOES are indebted to Plaintiffs as hereinafter alleged.

8.      Plaintiffs are informed and believe that any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

9.      In the alternative, Defendants should be estopped from relying on any statutes of limitations. Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Defendants owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

10.     Plaintiffs are informed and believe and upon this basis alleges Defendants, and each of them are, and at all times herein, were the agents, joint ventures, officers, members, representatives, consultants or employees of their co-Defendants and in committing the acts herein alleged, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-Defendants.

11.      Defendants should also be estopped from relying on the tender rule. An offer to pay the debt is not required as to claims to set side foreclosure sales, where it would be inequitable, such as where Plaintiffs does not owe the debt, or have a legal right to avoid the sale (*Humbolt Sav. Bank v. McCleverly* (1911) 161Cal.285, 291; *Carruth v. Fritch* (1950) 36 Cal.2d 426, 430-431 at 433)). Even after the sale, a void, fraudulent or mistaken foreclosure process, sale or trustee's deed can be set aside [or further enjoined]. See also: *Savage v. American Contractors Indemnity Co.* (2016) 2016 WL9413934 which held that Plaintiff was excused from making tender and the defendant is now estopped from, claiming that there was no sufficient tender; *Pierce v. Lukens* (1904) 144 Ca. 397,400. In the instant case, Plaintiffs maintain because of Defendants' acts that they have a legal right to avoid the sale to thus avoid tender.

## JURISDICTION AND VENUE

12.      The California Superior Court has jurisdiction over this action pursuant to *California Constitution Article VI §10* and *Code of Civil Procedure* § 410.10 because Defendants engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. Defendants have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over Defendants herein "does not offend the traditional notions of fair play and substantial justice."

13.      Venue is proper in this Court pursuant to *Code of Civil Procedure* § 392(a) because the Subject Property is located within the jurisdictional region of this Court. Additionally, Defendants herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Ventura, out of which this action arises, and which forms the basis of this action.

## GENERAL AND FACTUAL ALLEGATIONS

14.    Plaintiffs purchased the Subject Property in or about October 2000. Plaintiffs have lived and maintained this single-family residence since the date it was purchased.

15.    On or about November 22, 2006, Winstar Mortgage Partners, Inc. ("Winstar") originated a loan to Plaintiffs which was memorialized with a Deed of Trust ("DOT") in the amount of $431,250.00. The Deed of Trust was recorded in the County of Orange on or about December 4, 2006. The Trustee was listed as Landamerica Lawyers Title ("Landamerica"). Winstar was listed as the beneficiary. This is a first lien.  The Subject Property is the primary residence of the Plaintiffs.  A true and correct copy of the DOT is attached hereto as **Exhibit "B"**.

16.    On or about April 2, 2012, an Assignment of Deed of Trust ("Assignment") was recorded in the Orange County Recorder's Office. In the Assignment Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Winstar is purporting to transfer all beneficial interest in the DOT to HSBC Bank USA, National Association, as Trustee for the Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 A true and correct copy of the Prior Assignment is attached hereto as **Exhibit "C"**.

17.    On or about December 24, 2015, a Corrective Assignment of Deed of Trust ("Corrective Assignment") was recorded in the Orange County Recorder's Office. In the Corrective Assignment Bank of America as Attorney in Fact for Nationstar Mortgage, LLC by Power of Attorney is purporting to transfer all beneficial interest in the DOT to HSBC Bank USA, National Association, as Trustee for the Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 A true and correct copy of the Corrective Assignment is attached hereto as **Exhibit "D"**.

18.     On or about November 29, 2016, a Substitution of Trustee was recorded in the Orange County Recorder's Office where HSBC substituted Aztec Foreclosure Corporation as trustee in the DOT. A true and correct copy of the Substitution of Trustee is attached hereto as **Exhibit "E"**.

19.     On or about November 29, 2016, a Notice of Default ("NOD") was recorded in the Orange County Recorder's Office on behalf of HSBC successor in interest to Winstar by Aztec Foreclosure Corp., as Trustee ("Aztec"). The amount of default alleged in the NOD was $52,152.19 as of November 15, 2016. The NOD was signed by Aztec as Trustee for HSBC. A true and correct copy of the NOD is attached hereto as **Exhibit "F"** .

20.     The mortgage servicer Nationstar's "boiler-plate" Declaration attached to the NOD recorded November 29, 2016, that comports to comply with the provisions of Civ. Code § 2923.55 (c) is false as it states that mortgagee, beneficiary or authorized agent did contact the borrower pursuant to California Civil Code § 2923.55 (b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." This is false as neither lender, or servicer did contact either Plaintiff around this time period to explore foreclosure alternatives with them nor did they at any time leave a message concerning foreclosure alternatives at least 30 days prior to filing the NOD.

21.     Defendants' inaction harmed Plaintiffs' ability to make their payments.

22.     On or about September 1, 2021, a Substitution of Trustee was recorded in the Orange County Recorder's Office where HSBC substituted The Wolf Firm, a Law Corporation as foreclosing trustee in the DOT. A true and correct copy of the Substitution of Trustee is attached hereto as **Exhibit "G"**.

23.     On or about January 20, 2022, a Notice of Trustee's Sale ("NTS") was recorded in the Orange County Recorder's Office by The Wolf Firm, as Trustee for the Beneficiary. The NTS estimated that the total estimated amount owing on the loan was $578,917.00 as of January 18, 2022. The

foreclosure sale was set for February 17, 2022. A true and correct copy of the NTS is attached hereto as **Exhibit "H"**.

24.     The foreclosure sale was continued to June 30, 2022.

25.     In or around December 2016, Plaintiffs suffered a financial hardship and loss of income when their income became slow causing them to become delinquent in their mortgage payments. This was exacerbated during 2020 with the COVID pandemic.

26.     On or about February *15*, 2022, Plaintiffs' attorneys submitted a Debt Validation Demand under Section 807 of the Fair Debt Collection Practices Act ("FDCPA") to The Wolf Firm, trustee of the Declaration of Trust. More than 100 days has elapsed since the Demand under FDCPA was sent to the trustee of the DOT and no response has been made by the Wolf Firm. A true and correct copy of the Debt Validation Demand is attached hereto as **Exhibit "I."**

27.     On or about February *15*, 2022, Plaintiffs' attorneys submitted a Qualified Written Request, Dispute of Debt and Validation of Debt Letter, TILA Request in compliance with the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 ( e) ("RESPA") to The Wolf Firm, trustee of the Declaration of Trust. More than 100 days has elapsed since the Request in compliance with RESPA to the trustee of the DOT and no response has been made by the Wolf Firm. A true and correct copy of the RESPA Qualified Written Request is attached hereto as **Exhibit "J."**

28.     Plaintiffs will lose their home that they have owned since 2000 if relief is not obtained prior to the auction. In addition, Defendants will continue to incur damages in the form of damage to their credit rating, reasonable attorneys' fees, and costs of litigation.

### **FIRST CAUSE OF ACTION**

**(Against HSB, Nationstar and Does 1- 10)**

### **VIOLATION OF HOMEOWNERS BILL OF RIGHTS**

29.     Plaintiffs re-allege and incorporate by reference all proceeding paragraphs as though fully set forth herein.

30.     Defendants have violated the Homeowners Bill of Rights by its material violation of the following California Civil Codes:

a. Violation of California *Civil Code Section* 2923.55 for failing to perform due diligence prior to filing the notice of default on November 29, 2016.

b. Violation of *California Civil Code Section* 2923.7 for failing to appoint a single point of contact after Plaintiff requested a loan modification.

c. Violation of *California Civil Code Section* 2924.9 for failing to provide alternatives to foreclosure.

d. Violation of *California Civil Code Section* 2924.17 for filing of inaccurate notice of default, and   notice of  trustee's sale.

Defendants' inaction harmed Plaintiffs' ability to make their payments. The above HBOR violation caused Plaintiffs to default on their loan.

Defendants' violations were material, malicious and an intentional violation of a duty to comply owed to Plaintiffs. As a result of breach of these statutes Defendants are in material violation of the Homeowners Bill of Rights and said violation has caused Plaintiff damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## **SECOND CAUSE OF ACTION**

## **VIOLATION OF CIVIL CODE SECTION 2923.5 (b)**

### **(Against HSBC, Nationstar  and Does 1 - 10)**

30. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

31. Nationstar filed a declaration of that they had contacted Plaintiffs when it filed the Notice of Default on November 29, 2016. Plaintiffs was never contacted by HBC or Nationstar, servicer, in person or by telephone, following default on the mortgage, to assess their financial situation and to explore legitimate options to avoid foreclosure as required by statute prior to issuance of a Notice of Default. Defendants HSBC or Nationstar also made no efforts of due diligence to leave a message on Plaintiffs' telephones as required under California Law. Defendants HSBC and Nationstar have not complied with all the statutory requirements of California Civil Code §2923.55.

32. California Civil Code §2923.55(b) requires, at least 30 days before filing a Notice of Default, the Defendants must provide the borrower information on: (1) their right to request a subsequent meeting within 14 days; (2) a toll free number set up by the Department of Housing and Urban Development ("HUD"); (3) an assessment of the borrower's financial situation; and (4) an opportunity to explore options for the borrower to avoid foreclosure.

33. Defendants HSBC and Nationstar have, in violation of this section, failed to inform Plaintiffs of any of the required information within 30 days before recording the Notice of Default on their property.

34. Defendants, in violation of this section, have failed to make contact nor leave a message on Plaintiffs' telephones for Plaintiffs with the required information in any way.

35. Plaintiffs are not required to tender the full amount of the mortgage indebtedness due as a prerequisite to bringing an action under section 2923.55(b).

36. As a result of their violation of Civil Code § 2923.55(b), Defendants have damaged Plaintiffs by, without limitation: clouding title to the Subject Property by recording a Notice of Default against

the Subject Property and carry out a foreclosure process on the property without fulfilling procedural prerequisites culminating in a now scheduled sale of the Subject Property on June 30, 2022.

37. Defendants' actions stated herein are in violation of Civil Code § 2923.55(b) and have caused Plaintiffs damage in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

### THIRD CAUSE OF ACTION

### Violation of Civ. Code § 2924.17

### (Against All Defendants, and Does 1 – 10)

38. Plaintiffs re-allege and incorporate by reference all proceeding paragraphs as though fully set forth herein.

39. California Civil Code § 2924.17(a) and (b) provides "A declaration recorded pursuant to Section 2923.5 or pursuant to Section 2923.55, a notice of default, notice of sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence. Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status."

40. First, the declaration attached to the NOD is not based on reliable and competent evidence. The declaration states that Nationstar did contact Plaintiffs to explore foreclosure alternatives before recording the NOD. This was false as neither HSBC nor Nationstar, its servicer on the NOD did contact or leave a message for Plaintiffs on either of their telephones to explore foreclosure alternatives around this time period.

41. Second, the NOD, and NTS are not based on reliable and competent evidence.

42. The NOD was signed by AZTEC, as trustee for HSBC.

43. AZTEC is the prior foreclosing trustee to The Wolf Firm.

44. Defendants' conduct harmed Plaintiffs by placing Plaintiff's home at risk of sale on June 30, 2022. Plaintiffs demand recompense of damages by rescission of the Notice of Default, and Notice of Trustee's Sale. Plaintiffs also demands recompense of damages as a result of emotional distress of the possible loss of Plaintiffs' home that they have continuously lived in since 2000.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## **FOURTH CAUSE OF ACTION**

### **Breach of Good Faith and Fair Dealing**

### **(Against HSBC, Nationstar, and Does 1-10)**

45. Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

46. The Court of Appeals in *Automatic Vending Co. v. Wisdom* (1960) 12 Cal.App.2d 354, 358 held that "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. (Citations omitted). The implied covenant of good faith and fair dealing has been applied to a beneficiary's obligations under a deed of trust, therefore HSBC and Nationstar, its servicer have an obligation under the implied covenant of good faith and fair dealing.

47. Plaintiffs alleges that Defendants HSBC and Nationstar have, in violation of this section, failed to inform Plaintiffs of any of the required information within 30 days before recording the Notice of Default on their property.

48. Plaintiff alleges that Defendants HSBC and Nationstar Savings breached the implied covenant of good fair and fair dealing by not acting in good faith and in accordance with fair dealing

when they failed to inform Plaintiffs of any of the required information within 30 days before recording the Notice of Default on their property.

49.  Defendant's conduct harmed Plaintiffs by placing Plaintiffs' home at risk of foreclosure sale on June 30, 2022.  Monetary damages are inadequate if Plaintiffs lose their home where they have lived in since 2000.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of FDCPA

### (Against The Wolf Firm and Does 1 – 10)

50.  Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

51.  On or about February 15, 2022, Plaintiffs' attorneys  submitted a Debt Validation Demand under Section 807 of the Fair Debt  Collection Practices Act ("FDCPA") to The Wolf Firm, trustee of the Declaration of Trust. More than 100 days has elapsed since the Demand under FDCPA was sent to the trustee of the DOT and no response has been made by The Wolf Firm.

52.  Plaintiff alleges that Defendant The Wolf Firm owed a duty to Plaintiffs  to respond to the when Debt Validation Demand under Section 807 of the Fair Debt  Collection Practices Act which they have refused to do thus placing them in direct violation of the Demand under FDCPA.

53.  Defendants are liable for statutory relief pursuant to FDCPA.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of RESPA

### (Against The Wolf Firm and Does 1 – 10)

54.  Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

55. On or about February *15*, 2022, Plaintiffs' attorneys submitted a Qualified Written Request to Written Request, Dispute of Debt and Validation of Debt Letter, TILA Request in compliance with the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 ( e) ("RESPA") to The Wolf Firm, trustee of the Declaration of Trust. More than 100 days thus exceeding the statutory 60-day response from date of its receipt has elapsed since the Request in compliance with RESPA to the trustee of the DOT and no response has been made by the Wolf Firm this entitling Plaintiff to substantial penalties and fines.

56. Plaintiff alleges that Defendant The Wolf Firm owed a duty to Plaintiffs to respond to the when Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request ("RESPA") which they have refused to do thus placing them in direct violation of the Demand under RESPA.

57. Defendants are liable for statutory relief pursuant to RESPA.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment in Plaintiffs' favor and against Defendants and each of them as follows:

1.    For an order holding Defendants liable for their deceptive practices and other violations, awarding Plaintiffs compensation for all damages sustained in an amount to be proven at trial, including an award for past and future economic and compensatory damages, past and future non-economic, punitive and/or exemplary damages, and other damages;

2.    For civil penalties pursuant to statute and restitution;

3.    For declaratory and injunctive relief;

4.    For interest to be calculated at the maximum amount allowable by law, including pre- and post-judgment interest for damages;

5.      For cancellation of the Assignments of Deed of Trust, and Notice of Default;

6.      For an order voiding any and all documents wrongly recorded against the Subject Property; and

7.      For an order awarding Plaintiffs reasonable attorney's fees, reasonable costs of suit incurred and any other relief as the Court may deem just and proper.


Dated: September /6, 2022          SAUNDERS LAW GROUP


                                  By: _____
                                        Gary Saunders, Esq.
                                        Attorney for Plaintiffs,
                                        Michael Brookhyser, and
                                        Deborah Brookhyser

14

EXHIBIT A

APN: 241-055-08

LOT 78 OF TRACT NO. 3955, PER MAP RECORDED IN BOOK 141, PAGES 33-37 OF MISCELLANEOUS MAP, IN THE OFFICE OF THE ORANGE COUNTY RECORDER.

EXHIBIT B

RECORDING REQUESTED BY
LAWYERS TITLE

Recording Requested By:
WINSTAR MORTGAGE PARTNERS, INC.

Return To:
WINSTAR MORTGAGE PARTNERS, INC.

13705 FIRST AVENUE NORTH, #500
PLYMOUTH, MN 55441
Prepared By:

WINSTAR MORTGAGE PARTNERS, INC.
9201 SPECTRUM CENTER BLVD., #205
SAN DIEGO, CA 92123
800-303-1120

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

69.00

2006000812190 04:09pm 12/04/06
103 49 D11 22

0.00 0.00 0.00 0.00 63.00 0.00 0 00 0 00

————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

LOAN NO.: 3045549
ESCROW NO.: 05009106-500-MA

MIN 10028570000212216
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     NOVEMBER 22, 2006
together with all Riders to this document.
(B) "Borrower" is
MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND WIFE

Borrower's address is 5301 MYRA AVENUE, CYPRESS, CA 90630
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
WINSTAR MORTGAGE PARTNERS, INC.

Lender is a CORPORATION
organized and existing under the laws of MINNESOTA

Initials: MB DB

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3005  1/01
V-6A(CA) (0207) 01                                Page 1 of 15     LENDER SUPPORT SYSTEMS INC MERS6ACA.NEW (05/06)

Lender's address is
13705 FIRST AVENUE NORTH, #500, PLYMOUTH, MN  55441
(D) "Trustee" is
LANDAMERICA LAWYERS TITLE
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated    NOVEMBER 22, 2006
The Note states that Borrower owes Lender
FOUR HUNDRED THIRTY ONE THOUSAND TWO HUNDRED FIFTY AND NO/100 X X X X X X X X X X X X
                                                                          Dollars
(U.S. $ 431,250.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    DECEMBER 01, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

V-6A(CA) (0207) 01                         Page 2 of 15                         Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's
successors and assigns) and the successors and assigns of MERS. This Security Instrument
secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in the
        COUNTY        of        ORANGE        :
        [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 24105508             which currently has the address of
                  5301 MYRA AVENUE               [Street]
        CYPRESS            [City] , California      90630     [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title
to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or
custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any
or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to
take any action required of Lender including, but not limited to, releasing and canceling this Security
Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _MW DB_

V-6A(CA) (0207) 01                 Page 3 of 15                 Form 3005 1/01

Branch :USN   User :DPER

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

V-6A(CA) (0207) 01                    Page 5 of 15                    Form 3005  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

V-6A(CA) (0207) 01    Page 6 of 15    Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

V-6A(CA) (0207) 01                          Page 7 of 15                          Form 3005  1/01

Branch :USN    User :DPER

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

V-6A(CA) (0207) 01                    Page 8 of 15                    Form 3005  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

V-6A(CA) (0207).01                          Page 9 of 15                          Form 3005  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

Initials MBDB

V-6A(CA) (0207) 01                Page 10 of 15                Form 3005  1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

V-6A(CA) (0207).01                    Page 12 of 15                    Form 3005    1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

V-6A(CA) (0207) 01                    Page 13 of 15                    Initials: _____    Form 3005 1/01

Branch :USN    User :DPER

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                ·Witness


_____
                                                ·Witness


_____(Seal)
MICARL BROOKHYSER              ·Borrower

_____(Seal)
DEBORAH BROOKHYSER              ·Borrower


_____(Seal)
                                                ·Borrower

_____(Seal)
                                                ·Borrower


_____(Seal)
                                                ·Borrower

_____(Seal)
                                                ·Borrower


_____(Seal)
                                                ·Borrower

_____(Seal)
                                                ·Borrower


V-6A(CA) (0207) 01                    Page 14 of 15                    Form 3005  1/0'

State of CALIFORNIA
County of *ORANGE*                                        } ss.       A NOTARY PUBLIC

On *NOVEMBER 27, 2006*      before me, *ZACHARY BRYSON, NP*
                                                                              personally appeared

MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER

                                                                          (personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____ (Seal)

# PAYMENT ADVANTAGE
## FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

ESCROW NO.:  05009106-500-MA                    MIN: 100285700000212216
ORDER NO: 05009106-25                           MERS Phone: 1-888-679-6377
LOAN NO.:  3045549

THIS FIXED/ADJUSTABLE RATE RIDER is made this  22nd   day of   NOVEMBER, 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to
WINSTAR MORTGAGE PARTNERS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
5301 MYRA AVENUE, CYPRESS, CA  90630
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO
AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE
INTEREST RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL
BE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF
THIS PAYMENT OPTION IS CHOSEN THE PRINCIPAL AMOUNT TO REPAY COULD BE
GREATER THAN THE AMOUNT ORIGINALLY BORROWED.

ADDITIONAL COVENANTS:  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

A. INTEREST AND PAYMENTS
The Note provides for changes in the interest rate and the monthly payments, as follows:

2. INTEREST
(A) Fixed Interest Rate
Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially
accrue at a yearly rate of     6.250    %. This is my initial fixed interest rate and is the rate for
determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a
twelve-month year and a thirty-day month.
(B) Adjustable Interest Rate
The initial fixed interest rate I owe will change to an adjustable interest rate on the    1st    day of
DECEMBER, 2011    and the adjustable interest rate will change on that day every 12th month
thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each
date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new
rate of interest will become effective on each Interest Rate Change Date.

Multistate Payment Advantage Fixed/Adjustable Rate Rider-One Year LIBOR                       Init ials:
FE5769 (0608)                        Page 1 of 5    LENDER SUPPORT SYSTEMS, INC. FE5769.CAU (09/06)

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding two and a quarter percentage point(s) 2.25 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than 11.250 % or lower than the Margin.

(E) Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than 11.250 % or less than 2.25%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

3.   PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on JANUARY, 2007   . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at WINSTAR MORTGAGE PARTNERS, INC  #120
P.O. BOX 1575, MINNEAPOLIS, MN  55480-1575
or at a different place if required by the Note Holder.

(B) Minimum Payment

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i) Until  DECEMBER 01, 2016   ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus   THREE AND 0/1000THS percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the

Initials: [signature]

unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

(ii) If the unpaid principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

(C) Initial Monthly Minimum Payment

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $    1,876.83

(D) Monthly Payment Changes

Changes in my monthly payment will be the result of changes in the unpaid principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

(E) Additions to My Unpaid Principal

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

(F) Payment Options

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are greater than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i) Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. If the Maximum Negative Amortization Cap is reached then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

Multistate Payment Advantage Fixed/Adjustable Rate Rider-One Year LIBOR
FE-5769 (0608)    Page 4 of 5    Initials

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL BROOKHYSER          -Borrower

_____ (Seal)
DEBORAH BROOKHYSER          -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Multistate Payment Advantage Fixed/Adjustable Rate Rider-One Year LIBOR
FE-5789 (0508)                          Page 5 of 5

Branch :USN    User :DPER

# EXHIBIT "A"

All that certain real property situated in the County of Orange, State of
California, described as follows:

Lot 78 of Tract No. 3955, in the City of Cypress, as shown on map recorded in
Book 141, Pages 33 to 37 of Miscellaneous Maps, in the office of the County
Recorder of said County.

Assessor's Parcel Number:        **241-055-08**

EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By: Diana De Avila
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 12914760015915432

Property Address:
**5301 Myra Ave**
**Cypress, CA 90630-4557**
CAO-ADT 17615203         3/15/2012

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

$R00046896245 A         12.00

2012000185100 8:01 am 04/02/12

47 412 A32   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

This space for Recorder's use

MIN #: 10028570000212216         MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto **HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF MERRILL LYNCH MORTGAGE INVESTORS, INC., MORTGAGE PASS-THROUGH CERTIFICATES, MANA SERIES 2007-OAR2** whose address is 9062 OLD ANNAPOLISRD, COLUMBIA, MD 21045 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:         **WINSTAR MORTGAGE PARTNERS, INC.**
Original Borrower(s):    **MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND WIFE**
Original Trustee:        **LANDAMERICA LAWYERS TITLE**
Date of Deed of Trust:   **11/22/2006**
Original Loan Amount:    **$431,250.00**

Recorded in Orange County, CA on: **12/4/2006**, book N/A, page N/A and instrument number 2006000812190

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

3/15/12

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:

Trisha Jackson Assistant Secretary

State of California
County of Ventura

On    MAR 1 5 2012    before me, _____XIOMARA M. OLIVA_____, Notary Public, personally appeared
_____Trisha Jackson_____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public:    Xiomara M. Oliva    (Seal)
My Commission Expires:    11-12-14

XIOMARA M. OLIVA
COMM. # 1913041
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. NOV. 12, 2014

DocID#    1291476001591512

EXHIBIT D

Recording Requested By:
Bank of America
Prepared By: Carlos A. Rivas
4909 Savarese Circle
Tampa, FL 33634
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
P.O. Box 961006
Ft Worth, TX 76161-9836

DocID# 91514760015960117

Property Address:
5301 Myra Avenue
Cypress, CA 90630-4557
CA0-ADT-BANS34370022    12/2/2015  NSCORBWF1

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder                    12.00

* S R 0 0 0 8 0 4 8 3 1 7 5 *

2015000648292 8:46 am 12/24/15
7 410 A32 F13    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

This space for Recorder's use



# CORRECTIVE ASSIGNMENT OF DEED OF TRUST

** This Corrective Assignment of Deed of Trust is being recorded for the purposes set forth below. An Assignment of Deed of Trust executed by Bank of America, N.A., as assignor, in favor of NATIONSTAR MORTGAGE, LLC, as assignee, dated 7/29/2013 and recorded on 8/19/2013 [as Instrument #2013000489278 in] / [in Book #N/A, page #N/A of] the official records in the County Recorder's office of Orange County, CA (the "Prior Assignment") was inadvertently recorded by Bank of America, N.A., the then-servicer of the loan secured by the deed of trust referenced in the Prior Assignment and described below (the "Deed of Trust"). NATIONSTAR MORTGAGE, LLC has executed this Corrective Assignment of Deed of Trust (i) to ensure that the beneficiary of record immediately prior to the recordation of the Prior Assignment is re-established as the current beneficiary of record, and (ii) to transfer to such prior beneficiary of record all of its right, title and interest, if any, as beneficiary under the Deed of Trust.

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 4909 SAVARESE CIRCLE, TAMPA, FL 33634 does hereby grant, sell, assign, transfer and convey unto HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF MERRILL LYNCH MORTGAGE INVESTORS, INC., MORTGAGE PASS-THROUGH CERTIFICATES, MANA SERIES 2007-OAR2 whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:             MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
                         FOR WINSTAR MORTGAGE PARTNERS, INC., ITS SUCCESSORS AND ASSIGNS
Original Borrower(s):    MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND
                         WIFE
Original Trustee:        LANDAMERICA LAWYERS TITLE
Date of Deed of Trust:   11/22/2006
Original Loan Amount:    $431,250.00

Recorded in Orange County, CA on: 12/4/2006, book N/A, page N/A and instrument number 2006000812190

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said deed of trust.

IN WITNESS WHEREOF, the undersigned has caused this Corrective Assignment of Deed of Trust to be executed on

12/19/15

BANK OF AMERICA AS ATTORNEY IN FACT FOR
NATIONSTAR MORTGAGE, LLC BY POWER OF
ATTORNEY RECORDED ON DOCUMENT NUMBER
2014000298456

By: Joseph Luis Rosario

Joseph Luis Rosario, Assistant Vice President

State of FL, County of Hillsborough

The foregoing instrument was acknowledged before me this **DEC 0 9 2015**_____, by Joseph Luis Rosario, Assistant
Vice President authorized to sign on behalf of BANK OF AMERICA AS ATTORNEY IN FACT FOR NATIONSTAR
MORTGAGE, LLC BY POWER OF ATTORNEY RECORDED ON DOCUMENT NUMBER 2014000298456.
He/She is personally known to me or has produced_____ as identification.

Notary Public: _____Debora Patricia Marrero_____
My Commission Expires: __2/12/2018__

DEBORA PATRICIA MARRERO
Notary Public, State of Florida
Commission# FF 92424
My comm. expires Feb. 12, 2018

DocID# 91514760015960117

EXHIBIT E

Branch :USN    User :DPER

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$R00088813155*    12.00

2016000599189 8:00 am 11/29/16
47 NC-5 S15 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording Requested By
and When Recorded Return to:
**Title365**
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

16-004490CXE

# SUBSTITUTION OF TRUSTEE

| | |
|---|---|
| **Deed of Trust Date:**<br><br>November 22, 2006 | **Grantor[s]/Mortgagor[s]:**<br><br>Michael Brookhyser and Deborah Brookhyser, husband and wife |
| **Original Beneficiary/Mortgagee:**<br><br>Mortgage Electronic Registration Systems, Inc., solely as nominee for Winstar Mortgage Partners, Inc., a Minnesota Corporation | **Current Beneficiary/Mortgagee:**<br><br>HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 |
| **Recording Information:**<br><br>December 4, 2006, in Instrument No. 2006000812190 | **County:**<br><br>ORANGE, CALIFORNIA |
| **Servicing Agent:**<br><br>Nationstar Mortgage LLC | **Address of Servicing Agent**<br><br>8950 Cypress Waters Blvd, Coppell, Texas 75019 |
| **Property Address:**<br>5301 MYRA AVENUE, CYPRESS, CA 90630 | **Assessor's Parcel Number:**<br><br>241-055-08 |
| **Original Trustee:**<br>Landamerica Lawyers Title | |

HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 is the current beneficiary under said deed of trust.

SUBSTITUTION OF TRUSTEE                                                          Page 1 of 2

The beneficiary, pursuant to the terms of and authority granted under the deed of trust, hereby substitutes **Aztec Foreclosure Corporation, whose address is 3636 N. Central Ave., Suite #400**, Phoenix, Arizona 85012, as successor trustee under the deed of trust with all powers of the original trustee.

Dated this _18_ day of _Nov._, 20_16_.

**Nationstar Mortgage LLC, attorney-in-fact for** HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2

By: _____

Printed Name: ____Demetrice Person____

Title: ____Document Execution Specialist____

Date: ____11-18-16____

STATE OF TEXAS          §
COUNTY OF DENTON      §

This instrument was acknowledged before me this _18_ day of ____Nov.____, 20_16_ by ____Demetrice Person____, as ____Document Execution Specialist____ of Nationstar Mortgage LLC, on behalf of said entity.

__✓__ Personally known

___ Produced identification: *ID number and type of ID* ____N/A____

_____
Signature of Notary Public

**Tina Marie Braune**
Printed Name of Notary Public, State of Texas

(NOTARY SEAL)

TINA MARIE BRAUNE
Notary Public, State of Texas
Comm. Expires 11-17-2018
Notary ID 130027969

SUBSTITUTION OF TRUSTEE                                              Page 2 of 2

16-004490

EXHIBIT F

Branch :USN   User :DPER

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

18.00

2016000599190 8:00 am 11/29/16
47 NC-5 N15 F13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO**
Title365
**AZTEC FORECLOSURE CORPORATION**
**3636 N. Central Ave., Suite #400**
**Phoenix, AZ 85012**

_____

Space above this line for recorder's use only

APN # 241-055-08
Property Address: 5301 Myra Avenue, Cypress, CA 90630
Trustee Sale No. 16-004490CXE   Title Order No. 730-1611066-70

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU
NÀY

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property.  No sale date may be set
until approximately 90 days from the date this notice of default may be recorded (which
date of recordation appears on this notice).

The amount is $52,152.19 as of 11/15/16 and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage,

1 – Notice of Default

T.S. #: 16-004490CXE
ORDER #: 730-1611066-70
Notice of Default - Aztec

the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 c/o Nationstar Mortgage LLC
> C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877) 257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Substituted Trustee, or acting as agent for the beneficiary or trustee under a Deed of Trust dated 11/22/06, executed by Michael Brookhyser and Deborah Brookhyser, husband and wife, as trustor(s), to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., solely as nominee for Winstar Mortgage Partners, Inc., a Minnesota Corporation, as Beneficiary recorded on December 4, 2006 in Instrument No. 2006000812190 of official records in the Office of the Recorder of ORANGE County, California, as more fully described on said Deed of Trust.

Page 2 of 3

T.S. #: 16-004490CXE
ORDER #: 730-1611066-70
Notice of Default - Aztec

Including the Note(s) for the sum of <u>$431,250.00</u> that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE 02/01/14 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, TOGETHER WITH LATE CHARGES, IMPOUNDS, INSURANCE PREMIUMS AND/OR OTHER ADVANCES, TAXES, DELINQUENT PAYMENTS ON SENIOR LIENS, ASSESSMENTS, ATTORNEY'S FEES AND/OR TRUSTEE'S FEES, IF ANY, AND COURT RELATED COSTS ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY OTHER FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST, PROMISSORY NOTE, AND RELATED DOCUMENTS AND ALL OF WHICH MUST BE CURED AS A CONDITION OF REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5 or 2923.55 is attached to this notice.

DATE: ___11/23/16___

AZTEC FORECLOSURE CORPORATION
As Trustee or acting as Agent for the beneficiary

_Amy Connolly_
Amy Connolly
Assistant Secretary / Assistant Vice President

Page 3 of 3

Copy

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s):     MICHAEL BROOKHYSER & DEBORAH BROOKHYSER
Mortgage Servicer:  Nationstar Mortgage LLC
Property Address:  5301 MYRA AVE CYPRESS     CA 90630
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

    ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

    ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

    ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC
Mortgage Servicer

Dated: 8/10/16

By: _____ 8/10/16
Name (Print): Stephanie Watts    Document Execution Specialis

EXHIBIT G

Branch :USN    User :DPER

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||| 91.00

\* S R 0 0 1 3 1 3 1 6 6 5 \*

**2021000548813 10:01 am 09/01/21**

227 NC-5 S15    3

0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

Title365

After Recording Return To:

The Wolf Firm, A Law Corporation
1851 East 1st Street, Suite 100
Santa Ana, CA 92705
(949) 720-9200

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Matter ID: 8208-4538                                        TSG No : 730-1611066-70

## SUBSTITUTION OF TRUSTEE

| | |
|---|---|
| **Deed of Trust Date:** November 22 , 2006 | **Grantor[s]/Mortgagor[s]:** MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND WIFE |
| **Original Beneficiary/Mortgagee:** MORTGAGE ELECTRONIC REGISRATION, INC., AS NOMINEE FOR WINSTAR MORTGAGE PARTNERS, INC. | **Current Beneficiary/Mortgagee:** HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc , Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 |
| **Recording Information:** Recorded on December 04, 2006 as Instrument No 2006000812190 | **County Where Property Situated:** Orange, California |
| **Servicing Agent:** Nationstar Mortgage LLC | **Address of Servicing Agent:** 8950 Cypress Waters Boulevard Coppell, TX 75019 |
| **Property Address:** 5301 Myra Avenue, Cypress, CA 90630 | **Assessor's Parcel Number:** 240-055-08 |
| **Original Trustee:** LANDAMERICA LAWYERS TITLE | |

HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2  is the current beneficiary under said deed of trust.

The beneficiary, pursuant to the terms of and authority granted under the deed of trust, hereby substitutes The Wolf Firm, A Law Corporation, whose address is 1851 East 1st Street, Suite 100, Santa Ana, CA 92705, as successor trustee under the deed of trust with all powers of the original trustee.

SUBSTITUTION OF TRUSTEE                                                        Page 1 of 2

Dated this _02_ day of _March_ 20_21_

MR. COOPER as Attorney in Fact for
HSBC Bank USA, National Association as
Trustee for Merrill Lynch Mortgage Investors,
Inc., Mortgage Pass-Through Certificates, MANA
Series 2007-OAR2

By: _____
Printed Name: _Tracy Armstrong_
Title: _Doc Ex Associate_

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached and not the
truthfulness, accuracy, or validity of that document.

STATE OF TEXAS                §
COUNTY OF    DENTON           §

This instrument was acknowledged before me this _02_ day of _March_ 2021 by

_Tracy Armstrong_, as _Doc Ex Associate_, of Nationstar Mortgage LLC, on behalf of said entity

_X_ Personally known

_____ Produced identification: ID number and type of ID ____N/A____

_____
Signature of Notary Public

_Britney Fisher_
Printed Name, Notary Public, State of Texas

(NOTARY SEAL)

BRITNEY FISHER
Notary Public, State of Texas
Comm. Expires 10-03-2021
Notary ID 129581923

SUBSTITUTION OF TRUSTEE

Page 2 of 2

EXHIBIT "A"
## AFFIDAVIT OF MAILING
## FOR SUBSTITUTION OF TRUSTEE BY CODE

TS No.: 17-0716-11
Trustor: **MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND WIFE**

**I, Sindy Clements, Foreclosure Officer,** declare: That I am an officer, agent or employee of The Wolf Firm, A Law Corporation whose business address is:

> 1851 East 1st Street, Suite 100
> Santa Ana, California 92705

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Date: 8/6/21

Sindy Clements, Foreclosure Officer

EXHIBIT H

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$R00134817774$*    91.00

2022000027209 2:22 pm 01/20/22
227 NC-5 N34   3
0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

Title365

RECORDING REQUESTED BY
The Wolf Firm

AND WHEN RECORDED MAIL TO:
The Wolf Firm
1851 East 1st Street, Suite 100
Santa Ana, California 92705
Phone: (949) 720-9200
Foreclosure Dept. Fax (949) 608-0130

T.S. No. 17-0716-11                                   SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注: 本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**PLEASE NOTE THAT PURSUANT TO CIVIL CODE § 2923.3(d)(1) THE ABOVE STATEMENT IS REQUIRED TO APPEAR ON THIS DOCUMENT BUT PURSUANT TO CIVIL CODE § 2923.3(a) THE SUMMARY OF INFORMATION IS NOT REQUIRED TO BE RECORDED OR PUBLISHED AND THE SUMMARY OF INFORMATION NEED ONLY BE MAILED TO THE MORTGAGOR OR TRUSTOR.**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/22/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **MICHAEL BROOKHYSER AND DEBORAH BROOKHYSER, HUSBAND AND WIFE**
Duly Appointed Trustee: **The Wolf Firm, A Law Corporation**
Recorded **12/4/2006** as Instrument No. 2006000812190 of Official Records in the office of the Recorder of Orange County, California,

Street Address or other common designation of real property:    **5301 MYRA AVENUE**
**CYPRESS, CALIFORNIA 90630**

A.P.N.: 241-055-08

Date of Sale: 2/17/2022 at 12:00 PM

Place of Sale: At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, CA 92701

Amount of unpaid balance and other charges: $578,917.00, estimated

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (800) 758-8052 or visit this Internet Website www.Xome.com, using the file number assigned to this case 17-0716-11. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (800) 758-8052, or visit this internet website www.Xome.com, using the file number assigned to this case 17-0716-11 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase. The Notice to Tenant pertains to sales occurring after January 1, 2021.

Date: 1/18/2022

The Wolf Firm, A Law Corporation
1851 East 1st Street, Suite 100
Santa Ana, California 92705
Foreclosure Department (949) 720-9200
Sale Information Only: (800) 758-8052  www.Xome.com

Sindy Clements, Foreclosure Officer

Branch :USN    User :DPER

PLEASE BE ADVISED THAT THE WOLF FIRM MAY BE ACTING AS A DEBT COLLECTOR, ATTEMPTING
TO COLLECT A DEBT.  ANY INFORMATION YOU PROVIDE MAY BE USED FOR THAT PURPOSE.

EXHIBIT I



SAUNDERS LAW GROUP, Ltd

Debt Validation Demand

February 15, 2022

**The Wolf Firm, A Law Corporation**
**1851 East 1st Street, #100**
**Santa Ana CA 92705**
info@wolffirm.com
**Fax 949-608-0133**


RE:    **Michael Brookhyser**
       **5301 Myra Ave, Cypress CA 90630**
       **APN: 241-055-08**
       **TS# 17-0716-11**

To Whom It May Concern:

THIS LETTER IS INTENDED TO PLACE YOU ON NOTICE.

This law firm represents **Michael Brookhyser** regarding the above referenced property and/or debt. Any and all future communication must be through our office. Do not contact our client directly in any manner.

Section 807 of the Fair Debt Collection Practices Act (FDCPA) prohibits false, misleading or deceptive collections practices. Some of these practices include:

- Falsely listing the status of the debt and/or how much is actually owed;
- Falsely accepting compensation or services rendered as the collection of the debt;
- Telling the debtor that they will go to prison or otherwise be arrested for non-payment;
- Threatening legal action without the intent to actually take that action;
- Imply that the consumer committed a crime;
- Using a different name other than the name of the actual debt collector business or organization;

- Falsely implying that the debt collector is "vouched for, bonded by, or affiliated with the United States or any State" by presenting a badge or uniform;
- Falsely implying that the collector is an attorney or that the communication is from an attorney;
- Identifying his or herself as a debt collector when they are not;
- Using any documentation which falsely represents a court or official or agency of the State or the United States.

Be advised this is not a refusal to pay, but a notice that your claim is disputed and validation is requested.

Under the Fair Debt collection Practices Act (FDCPA), our client has the right to request validation of the debt allegedly owed by our client. We are requesting proof that our client indeed the party you are asking to pay this debt, and there is some contractual obligation that is binding our client to pay this debt.

This is not a request for "verification" or proof of my mailing address, but a request for validation made pursuant to 15 USC 1692g Sec. 809 (b) of the FDCPA. We are requesting that your offices provide our firm with competent evidence that our client has any legal obligation to pay you.

At this time, we will also inform you that if your offices have or continue to report invalidated information to any of the three major credit bureaus (Equifax, Experian, Trans Union), this action might constitute fraud under both federal and state laws. Due to this fact, if any negative mark is found or continues to report on any of our client's credit reports by your company or the company you represent, we will not hesitate in bringing legal action against you and your client for the following.

- Violation of the Fair Debt Collection Practices Act (FDCPA);
- Defamation of Character.

We are sure your legal staff will agree that non-compliance with this request could put your company in serious legal trouble with the FTC and other state or federal agencies.

If your offices are able to provide the proper documentation as requested in the following declaration, we will require 30 days to investigate this information and during such time all collection activity must cease and desist. Also, during this validation period, if any action is taken which could be considered detrimental to any of our client's credit reports, we will not hesitate in bringing legal action against you and your client. This reporting repository that could be inaccurate or invalidated. If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately. This includes any listing of any information to any of the credit bureaus.

Please provide the following:

- Agreement with your client that grants you the authority to collect on this alleged debt;
- Agreement that bears the signature of the alleged debtor wherein he/she agreed to pay the creditor;
- Any insurance claims been made by any creditor regarding this account;
- Any Judgments obtained by any creditor regarding this account and date;
- Name and address of alleged creditor;
- Name on file of alleged debtor;
- Alleged account number;
- The reference number;
- Address on file for alleged debtor;
- Amount of alleged debt;
- Date this alleged debt became payable;
- Date of original charge off or delinquency;
- Verification that this debt was assigned or sold to collector;
- Complete accounting of alleged debt;
- Commission for debt collector if collection efforts are successful;
- The date of the last periodic statement or written account statement or invoice that the creditor provided to the consumer;
- The charge-off date;
- The date of last payment made;
- The transaction date.

If the debt you're attempting to collector is related to a mortgage debt, you must provide our client all of the above and provide a copy of the following:

- The itemization date;
- The amount of the debt on the itemization date;
- An itemization of interest, fees, payments, and credits since the itemization date;
- Copy of the original 1003 application executed by our client;
- Copy of the initial set oof documents sent to our client;
- Copy of escrow documents and final closing statement;
- Copy of prelim and title reports and closing documents.

A provision of the amended FDCPA prohibits debt collectors from bringing or threatening to bring a legal action to collect a time-barred debt (that is, a debt for which the statute of limitations has expired). (12 C.F.R. § 1006.26(b)). We are under the impression that you are not violating the law since you did not disclose it on your communication to our client that you're collecting on a time-barred debt. (12 C.F.R. § 1006.34).

Please provide the name and address of the bonding agent and the agent of service for you and your client, in case legal action becomes necessary.

Your claim **cannot and will not** be considered if any portion of the above is not completed and returned with copies of all requested documents. This is a request for validation made pursuant to the Fair Debt Collection Practices Act. Please allow 30 days for processing after we receive this information back.

Best Regards

Gary Saunders
Attorney at Law

EXHIBIT J



**SAUNDERS LAW GROUP, LTD**

*February 15, 2022*

*Via Email*
info@wolffirm.com

**In the Matter of:**
**Michael Brookhyser**

**Property Address:**
**5301 Myra Ave, Cypress CA 90630**

**("Subject Property")**

**APN: 241-055-08**
**TS# 17-0716-11**

**Trustee: The Wolf Firm, A Law Corporation**

**RE: QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST**

**Dear Sir/Madam:**
Our law office has been retained by **Michael Brookhyser** ("Borrower") to provide legal services to the above-mentioned client in the above referred loan and property address. As such please address all communication and correspondence to this office only. This is also a request under the Federal Debt Control Practices Act. Furthermore, this letter is also a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).

We are writing to you to inquire and get more knowledge about the following:
(a) accounting and servicing of this mortgage;
(b) the needs for understanding and clarification of various sale;
(c) transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses;
(d) records related to the servicing of this account from its origination to the present date.

We are plainly frustrated as of this date, the documents and information which we had seen provided to us by our client that you have sent them, and the conversations with your service

1891 California Avenue, Suite 102   Corona, CA 92881
951.272.9114  www.saunderslawoffice.com

representatives have been unproductive. You have not answered their questions. You are simply not approachable as you had phones which are not working, if working keeps on disconnecting. Your representatives continuously deny faxes sent to them, financial information exchanged. You deny everything sent to you. We had made innumerable attempts to send you papers, documents, phones, faxes, and your rude, inconsiderate employees do not acknowledge anything sent to them.

Needless to say, we are very concerned with all this rising foreclosure. This is the primary home for our clients and by all means they like to live here, and have no intention of foreclosing on this property. Prior to this, they have a perfect payment record. With all the news lately regarding the stories of predatory lending, you have left my client feeling that there is something you are trying to hide. We worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients are currently, or may be legally obligated to.

This law office hereby demand absolute first hand evidence from you of the original uncertificated or certificated security regarding the Loan. In the event you do not supply us with the very security it will be a positive confirmation on your part that you do not have the requisite documentation needless to say the possession of a note. As you know possession of the original note is the most important document here.

We also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to us as well. Absent the actual evidence of the security we have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say my clients owe. By debt we am referring to the principal balance you claim our clients owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

This can be done independently and to validate this debt, we need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.

We also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim our clients owe. We would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

We understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:
-- Increased the amounts of monthly payments;
-- Increased the principal balance I owe;
-- Increased the escrow payments;

1891 California Avenue, Suite 102  Corona, CA 92881
951.272.9114  www.saunderslawoffice.com

– Increased the amounts applied and attributed toward interest on this account;
– Decreased the proper amounts applied and attributed toward the principal on this account;
and/or
– Assessed, charged and/or collected fees, expenses and miscellaneous charges our clients are
not legally obligated to pay under this mortgage, note and/or deed of trust.

We request you insure that our clients had not been the victim of such predatory servicing and
lending practices.
To insure this, we have authorized a thorough review, examination, accounting and audit of the
LOAN by mortgage auditing and predatory servicing or lending experts. This exam and audit
will review this mortgage account file from the date of initial contact, application and the
origination of this account to the present date written above.

**Again, this is a Qualified Written Request under the Real Estate Settlement Procedures
Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under
the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties
and fines for non-compliance or failure to answer my questions provided in this letter
within sixty (60) days of its receipt.**

In order to conduct the examination and audit of this loan, we need to have full and immediate
disclosure including copies of all pertinent information regarding this loan. The documents
requested and answers to my questions are needed by myself and others to ensure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but
not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices
Act, HOEPA and other laws;

2. That the origination and/or any sale or transfer of this account or monetary instrument, was
conducted in accordance with proper laws and was a lawful sale with complete disclosure to all
parties with an interest;

3. That you disclose the claimed holder in due course of the monetary instrument/deed of
trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled
to the benefits of payments;

4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary
instrument ownership, entitlements, full disclosure of actual funding source, terms, costs,
commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including
but not limited to the period commencing with the original loan solicitation through and
including any parties, instruments, assignments, letters of transmittal, certificates of asset backed
securities and any subsequent transfer thereof;

5. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in
accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust,
including but not limited to all accounting or bookkeeping entries commencing with the original

loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

7. That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

8. That interest and principal have been properly calculated and applied to this loan;

9. That any principal balance has been properly calculated, amortized and accounted for;

10. That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding the LOAN:

1. Any certificated or uncertificated security used for the funding of this account;

2. Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3. Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4. Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5. Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6. Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7. Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8. Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9. Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11. Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12. Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13. Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

**Please also send me copies, front and back, of:**

1. Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any Note in this matter;

2. Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust and any Note;

3. Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust and any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

5. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

6. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

7. Any documentation evidencing the Mortgage/Deed of Trust is not a constructive trust or any other form of trust;

8. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10. All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

11. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14. All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17. All letters, statements and documents sent to me by your company.

18. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

19. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

23. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

In regards to Account Accounting and Servicing Systems:

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

**In regards to Debits and Credits:**

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

**In regards to Mortgage and Assignments:**

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2. If not, why?

3. Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county

records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1. Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5. Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9. Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10. Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13. Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

15. How much total in attorney fees have been assessed to this account from the inception to the present date?

16. How much total in attorney fees have been collected from this account from the inception to the present date?

17. How much total in attorney fees have been charged to this account from the inception to the present date?

18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that have billed for such fees that have been assessed or collected from this account from the inception to the present date.

In regards to Suspense/Unapplied Accounts:

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

In regards to late fees:

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

1891 California Avenue, Suite 102  Corona, CA 92881
951.272.9114  www.saunderslawoffice.com

2. Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4. Are late fees considered interest? Yes or No?

5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7. If yes, please describe what expenses or damages were charged or assessed to this account.

8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

9. Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.

10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.

11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14. Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15. Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16. Have any late charges been assessed to this account? Yes or No?

17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

1891 California Avenue, Suite 102   Corona, CA 92881
951.272.9114   www.saunderslawoffice.com

18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19. Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?

2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price charged for each property inspection.

5. Please tell me the date of each property inspection.

6. Please tell me the name and address of each company and person who conducted each property inspection on my property.

7. Please tell me why property inspections were conducted on my property.

8. Please tell me how property inspections are beneficial to me.

9. Please tell me how property inspections are protective of my property.

10. Please explain to me your policy on property inspections.

11. Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12- If yes, why?

13. Do you use property inspections to collect debts? Yes or No?

14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?

15. If yes, please answer when and why?

16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.

17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

18. If yes, why?

19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

20. If yes, why?

21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26. If yes, when and how much was charged?

27. Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28. How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30. Please forward to me copies of all property inspections made on my property in this mortgage account file.

31. Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1. Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?

2. If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3. If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price of each BPO.

5. Please tell me who conducted the BPO.

6. Please tell me why BPOs were conducted on my property.

7. Please tell me how BPOs are beneficial to me.

8. Please tell me how BPOs are protective of my property.

9. Please explain your policy on BPOs.

10. Have any BPO fees been assessed to this account? Yes or No?

11. If yes, how much in total BPO fees have been charged to this account?

12. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.

13. Please send to me copies of all BPO reports that have been done on my property.

14. Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**
1. Have you placed or ordered any force-placed insurance policies on my property?

2. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3. Please tell me the price of each policy.

1891 California Avenue, Suite 102   Corona, CA 92881
951.272.9114  www.saunderslawoffice.com

4. Please tell me the agent for each policy.

5. Please tell me why each policy was placed on my property.

6. Please tell me how the policies are beneficial to me.

7. Please tell me how the policies are protective of my property.

8. Please explain to me your policy on force-placed insurance.

9. Have any force-placed insurance fees been assessed to this account? Yes or No?

10. If yes, how much in total force-placed insurance fees have been assessed to this account?

11. Have any force-placed insurance fees been charged to this account? Yes or No?

12. If yes, how much in total force-placed insurance fees have been charged to this account?

13. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of force-placed insurance fees from me.

14. Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15. Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.

16. Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18. Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

1891 California Avenue, Suite 102   Corona, CA 92881
951.272.9114  www.saunderslawoffice.com

2. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3. Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4. Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5. Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6. Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7. Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8. Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13. Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or

organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17. How much was paid for this individual mortgage account by you?

18. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20. Who did you issue a check or payment to for this mortgage loan?

21. Please provide me with copies of the front and back of the canceled check.

22. Did any investor approve of the foreclosure of my property? Yes or No?

23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24. Please identify all persons who approved the foreclosure of my property.

Please provide us with the documents we have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.
Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.
It is our hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

**Default Provisions under this QUALIFIED WRITTEN REQUEST**

LENDER or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Borrower or any property or collateral connected to Borrower or the LOAN and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1. Borrower's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment LENDER may have or may have had in connection with the LOAN and any property and/or real estate connected with the LOAN.
2. Borrower's right to have any certificated or uncertificated security re-registered in Borrower's, and only Borrower's name.
3. Borrower's right of collection via LENDER's liability insurance and/or bond.
4. Borrower's entitlement in filing and executing any instruments, as power of attorney for and by LENDER, including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where LENDER is located.
5. Borrower's right to damages because of LENDER's wrongful registration, breach of intermediary responsibility with regard to Borrower's asset by LENDER issuing to Borrower a certified check for the original value of Borrower's monetary instrument.
6. Borrower's right to have the LOAN completely set off because LENDER's wrongful registration, breach of intermediary responsibility with regard to Borrower's monetary instrument/asset by LENDER sending confirmation of set off of wrongful liability of Borrower and issuing a certified check for the difference between the original value of Borrower's monetary instrument/asset and what Borrower mistakenly sent to LENDER as a payment for such wrongful liability.

Sincerely

Gary S. Saunders

# CERTIFICATE OF SERVICE

I am employed in the County of Riverside, State of California. I am over the age of 18 and not a party to the within action. My business address is 1891 California Avenue, Suite 102, Corona, CA 92881.

On September 16, 2022, I served the foregoing document described as **PLAINTIFFS' FIRST AMENDED COMPLAINT** on all interested parties in this action a copy thereof enclosed in a sealed envelope addressed as follows:

David L. Chaffin, Esq.
THE WOLF FIRM, A LAW Corporation
1851 East 1ˢᵗ Street #100
Santa Ana CA 92705
***Email: David.chaffin@wolffirm.com***

[X]    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders, the foregoing documents will be served by the Court via NEF and hyperlink to the document. On **September 16, 2022**, I checked the CM/ECF docket for this matter and determined that the following persons on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated above.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 16, 2022, at Corona, California.


Deanna Kunz                                      /s/ Deanna Kunz
Print Name                                       Signature

1